**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**TRACY PICKETT**
**on behalf of K.H.**                                                                                    **PLAINTIFF**

**V.**                                                       **CIVIL ACTION NO.  3:15CV700 TSL-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                            **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Tracy Pickett appeals the final decision denying the application for Supplemental

Security Income ("SSI") that she filed on behalf of her minor son, K.H.  The

Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final

decision of the Administrative Law Judge.  Having carefully considered the hearing

transcript, the medical records in evidence, and all the applicable law, the undersigned

recommends that the decision be remanded.

**Facts and Procedural Background**

On July 25, 2012, Plaintiff filed an application for SSI on behalf of her then 3-

year-old son, K.H., alleging he became disabled on September 4, 2010, due to asthma.

Following agency denials of his application, an Administrative Law Judge ("ALJ")

rendered an unfavorable decision finding that Plaintiff had not established that K.H. was

disabled within the meaning of the Social Security Act.  The Appeals Council denied

Plaintiff's request for review.  She now appeals that decision.

**Childhood Disability Standard**

In order for a child to be found disabled and entitled to SSI benefits, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).  When evaluating a child's eligibility for disability benefits, an ALJ engages in a three-step sequential process, which considers:

(1)     whether the child is doing substantial gainful activity;

(2)     if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and

(3)     if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d).  If a child's impairment does not meet, medically equal, or functionally equal a listed impairment, the child will not be considered disabled. Functional equivalency is measured according to six domains of function: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530-32 (1990)).  To be functionally equivalent to a listing, the impairment must result in either a "'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain ... ."

2

20 C.F.R. § 416.926a(a).  A marked limitation interferes seriously with the child's ability to "independently initiate, sustain, or complete activities," while an extreme limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. §§ 416.926a(e)(2)(i) & 416.926a(e)(3)(i).

Upon reviewing the evidence, the ALJ concluded that K.H. was not disabled under the Social Security Act and was not entitled to childhood disability benefits pursuant to 20 C.F.R. § 416.924(a).  At step one of the three-step sequential evaluation process, the ALJ found that K.H. had not engaged in substantial gainful activity since July 25, 2012, the application date.  At steps two and three, the ALJ found that while K.H.'s asthma and epistaxis were severe, the medical evidence did not support listing-level severity.  With regard to the six functional domains, the ALJ concluded that Plaintiff had less than marked limitation in moving about and manipulating objects, and in health and physical well-being, and no limitations in any other domain.

## Standard of Review

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d. 243, 245 (5th Cir. 1991)). The Fifth Circuit defines substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th

3

Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).  Any findings

by the Commissioner that are supported by substantial evidence are conclusive.  *Ripley v.*

*Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

### Discussion

A claimant has the burden of proving that his condition meets or equals a listing,

and he must manifest all of the specified criteria of a particular listing to meet this burden.

*Whitehead v. Colvin,* 820 F.3d 776, 781 (5th Cir. 2016) (citing *Muse v. Sullivan*, 925 F.2d

785, 789 (5th Cir. 1991)).

Plaintiff's sole issue on appeal is that the ALJ erred in failing to find that K.H. met

Listing 103.03C2 for asthma at step three of the sequential evaluation.  20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 103.03C2.  Specifically, Plaintiff contends the ALJ erred in failing to

set forth the elements of Listing 103.03C2,  and in failing to explain why the evidence did

not support a favorable finding at step three.  In support, Plaintiff cites *Audler v. Astrue*,

501 F.3d 446 (5th Cir. 1997).  In *Audler*, the ALJ summarily determined that the

claimant's impairments did not meet or equal any of the impairments in the Listings, but

did not identify which Listing the claimant failed to meet or explain how she reached that

conclusion.  *Id*. at 448.  The *Audler* Court held that "[such a bare conclusion is beyond

meaningful judicial review." *Id*.  (quotation omitted).  However, the *Audler* Court

stressed that procedural perfection is not required in administrative proceedings.  *Id*.  A

claimant must demonstrate that his substantial rights were affected.  *Id*.  at 448.  Such a

showing typically requires a claimant to demonstrate that his impairment satisfies the

criteria of a particular listing.  *Id.*  at 448-49.  If a disability claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled at step three.

In this case, it is undisputed that K.H. was diagnosed with asthma, but a diagnosis alone is insufficient to establish presumptive disability or severity.  For asthma to be presumptively disabling, Listing 103.03C2  requires the medical evidence to show in relevant part:

> C.   Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
> . . .
>
> 2.   Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03C2.  The second requirement "only states that a claimant must use steroids in any three-month period during a year.  A claimant could satisfy this criterion by taking steroids in three consecutive months, in three months scattered throughout the year, or in any other combination of months during a calendar year."  *M.N. ex rel. Rodriguez v. Colvin*, No. 12 C-9367, 2014 WL 1612991, at *5 (N.D.Ill., Apr. 22, 2014).

Plaintiff argues that the ALJ erred in failing to find that K.H. meets the criteria for the asthma listing.  In evaluating Listing 103.03C2, the ALJ explained that the claimant's corticosteroid usage did not satisfy listing criteria because the Listing contemplates the use of systemic/oral steroids, rather than inhalant steroids:

. . . The undersigned acknowledges that the listing does distinguish between systemic and inhaled steroids and notes that following publication of a Notice of Proposed Rulemaking ("NPRM") in the Federal Register, numerous letters containing comments pertaining to the proposed changes were received.  One commenter noted that "proposed 103.03C and 103.03C3 should include the use of inhaled steroid as well as oral steroid (*see* Hallex II-4-1-6D5b)."  However, the response to such comment provides, in part, that "[w]e did not include the use of inhalant steroids in 103.03C1 or 103.03C2 (103.03C3 in NPRM), because this form of treatment does not in itself imply the required level of severity that is intended by this listing."  Furthermore, given the listing's reference to "[s]hort courses of corticosteroids that average more than 5 days per month," it seems clear that the listing contemplates the use of systemic steroids, which are generally prescribed for very brief periods, rather than inhaled steroids, which are prescribed for long-term use.[1]

On this basis, the ALJ concluded that K.H.'s asthma did not rise to listing level severity at step three.  Plaintiff argues, however, that the ALJ erroneously focused on K.H.'s continuous use of inhalant steroids to the exclusion of other evidence.

The undersigned notes that the courts are split on whether the Listing's short-course corticosteroids is intended to include inhaled corticosteroids.  At least one court has held that the Listing's language is "clear and unambiguous," and an ALJ should not be allowed to "create a distinction between inhaled and oral corticosteroids, when that distraction does not appear in the statute."  *Correa v. Commissioner*, 381 F. Supp.2d 386, 396 (D. N.J.  2004).  While other courts have held that inhaled corticosteroids are long-term medications used to prevent exacerbations of mild asthma, and thus by definition, are not the "short-course corticosteroids" contemplated by the Listing.  *See Collier ex rel.*

---

[1]ECF No.  6, p. 19.

*K.L.C. v. Astrue*,  No. 1:09-CV-0066-LJM-TAB, 2010 WL 481038 (S.D. Ind. Feb. 1,

2010) ("[Although K.L.C. uses a corticosteroid inhaler on a daily basis this is not the type

of '[s]hort course of corticosteroids' contemplated by this Listing. . . .  Rather, Listing

103.03C2 requires the claimant to demonstrate use of 'long-term control medications' . . .

[, namely] oral and intravenous corticosteroids, such as prednisone and

methylprednisolone, [which] are used to treat acute asthma attacks or severe persistent

asthma."). *Sanchez ex rel. Sanchez v. Barnhart,* No. 03-C-537-C,  2005 WL 752220 at *9

(W.D. Wis. Mar. 30, 2005) ( "It is clear that the commissioner's use of the term 'short

courses of corticosteroids' in Listing 103.03C2 refers to this latter form of steroids and

not to long-term, daily use of a steroid inhaler.  'To conclude otherwise would lead to the

absurd result that thousands of children with only mild asthma could be found disabled

under the Social Security Act.'"); *Shattles ex. rel. Shattles v. Astrue*, No.  CV09-0761-A,

2010 WL 3801307, at * 7 (W.D. La., Aug. 23, 2010) (claimant "may not rely on use of

long-term low-dose corticosteroid inhalers to satisfy Listing 103.03(C)(2)").

For purposes of this appeal, the Court need not resolve whether K.H.'s inhaled

corticosteroid usage is the sort of usage contemplated by Listing 103.03C2.  In assessing

whether K.H.'s asthma functionally equaled the listings, the ALJ acknowledged K.H.'s

use of oral steroid medication, but concluded that the frequency of usage did not satisfy

the requirements of Listing 103.03C2.  The ALJ explained as follows:

> Records dated October 24, 2012, and November 28, 2012, reference that
> oral steroid medication had been used three times in 2012; the medical
> evidence is not clear as to the dates or length of the courses of steroids thus

prescribed.  Records dated June 19, 2013, included [sic] that so far, in 2013, the claimant had been on oral steroids twice, once in April and once in May; the evidence is again unclear as to the April prescription, but the UMC notes include the May prescription, which consisted of a course of prednisolone limited to 5 days.  According to the UMC notes, the claimant's mother reported that the claimant was prescribed oral steroids by his pediatrician in October 2013; a review of the primary care notes indicates that the claimant was prescribed prednisolone for an unspecified number of days in September 2013, but there was no such prescription in October 2013.  Thereafter, a 7 day round of oral steroids was prescribed at UMC on February 21, 2014.  The record does not establish short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12 month-period, as required by the listing.[2]

Plaintiff maintains that the ALJ failed to consider critical evidence concerning K.H.'s oral corticosteroid usage, however.  Specifically, Plaintiff argues that the ALJ failed to consider pharmaceutical records demonstrating that K.H. was prescribed the oral corticosteroid, Prednisolone, for more than 5 days on:  July 24, 2012, April 18, 2013, May 6, 2013, September 12, 2013, and, February 21, 2014.

A review of the record confirms that while the ALJ accurately assessed that K.H.'s Prednisolone prescription was for 5 days in May 2013, and for 7 days in February 2014, she overlooked pharmaceutical evidence documenting Prednisolone prescriptions at other times.  For instance, although treatment notes fail to specify the number of days for the claimant's Prednisolone prescription in April 2013, pharmaceutical records confirm the prescription was for 6 days.  These records also reflect that the claimant was given the

---

[2]ECF No. 6, p. 22 (internal citations omitted).

same prescription by the same physician in September 2013.[3]  Thus, the claimant appears to have been prescribed oral corticosteroids averaging more than 5 days on April 18, 2013, and September 12, 2013.  The ALJ's failure to consider this evidence in her analysis was error.[4]

The Commissioner does not address whether Plaintiff's corticosteroid  usage (oral or inhaled) met the severity requirement of 103.03C2, but posits that any error in failing to find that Plaintiff had the requisite corticosteroid usage was harmless.  The Commissioner contends that even assuming that Plaintiff has established that K.H. met the severity criteria, she failed to meet the threshold requirement by showing that K.H. had "persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03C2.  In support, the Commissioner points to medical records showing that on many occasions from 2012-2014, there were examinations without any report of low-grade wheezing.  The claimant's lungs were also clear to auscultation bilaterally, and his respiratory effort, rate and rhythm were all normal.

As noted above, the ALJ's sole basis for finding that K.H. did not meet Listing 103.03C2 was that the record "does not establish short courses of corticosteroids that

---

[3]The prescriptions for April 2013 and September 2013 read as follows:  "PrednisoLONE 15MG/ML."  ECF No. 6, 379, 395.  It is not clear that the September 2013 prescription was for 6 days too.  The ALJ should conduct further review on remand.

[4]ECF No. 6, pp. 173-79; 252, 379, 395, 450, 491.

average more than 5 days per month for at least 3 months during a 12 month-period, as required by the listing."[5]  The ALJ made no express findings as to whether the threshold requirements were met.  Having reviewed the record carefully, the undersigned is unable to ascertain whether the ALJ's silence indicates that she found that these elements were satisfied.  *See Matthews v. Astrue*, No. 11-667-RLB, 2013 WL 5442265, at * 5 (M.D. La., Sept. 27, 2013).

Procedural improprieties constitute a basis for remand "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988)).  Even if a court determines that the ALJ failed to state the reasoning for an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless.  *Audler*, 501 F.3d at 448; *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) ("Procedural perfection in administrative proceedings is not required" unless the substantial rights of a party have not been affected.").  As noted earlier, such a showing typically requires a claimant to demonstrate that her impairment satisfies all the criteria of a particular listing.  *Audler*, 501 F.3d at 448-49.  Plaintiff has presented sufficient evidence here to warrant further consideration.

As the ALJ and Plaintiff both note, the record confirms that "on numerous occasions, physical examinations showed respiratory distress, wheezing, rhonchi, and

---

[5]ECF No. 6, pp. 22.

decreased air movement."  Medical records from 2012 document that K.H. had respiratory distress and inspiratory wheezing in all lung fields, and describe his wheezing as "moderate" and "persistent."  In 2013, treatment records also indicate diffuse wheezing and describe his asthma as "moderate," "persistent," and "not under control due to persistent symptoms."  The claimant also exhibited decreased air movement and wheezing when he sought emergency room treatment for shortness of breath and non-productive cough on February 20, 2014.[6]

In addition to the medical evidence, the claimant's mother testified that the claimant wheezes between asthma attacks, and estimates that his asthma "flare-ups" occur once or twice a week for approximately one hour.  She also testified that she administers three breathing treatments per day, or more if he is sick, and that he uses bronchodilators and nebulizers every day.  Although the ALJ found the statements concerning the intensity, persistence, and limiting effects of the claimant's systems were not entirely credible, this determination was not based on consideration of all of the evidence. [7]

Further, while the ALJ assigned significant weight to the opinion of the non-examining agency physician, who opined that K.H. did not satisfy listing criteria, the record shows the opinion was submitted on January 30, 2013.  The physician did not have the benefit of evidence regarding Plaintiff's asthma and corticosteroid usage in April,

---

[6]ECF No.  6, pp. 18, 227-236, 298-346, 365-405, 426-504.

[7]ECF No. 6, pp.  48-69.

11

May, and September 2013.[8]

In sum, the issue at step three of the sequential evaluation process is whether Plaintiff's impairments are severe enough to meet or medically equal the criteria of a Listing.  Although the ALJ identified an appropriate listing and gave a detailed summary of the medical evidence, her step-three analysis is incomplete.  The ALJ overlooked evidence in the claimant's pharmaceutical records suggesting that Plaintiff had the requisite *oral* corticosteroid usage to the meet the Listing's severity criteria.  And while the Commissioner contends the error was harmless because the medical evidence establishes the Listing's threshold requirements were not met, Plaintiff has pointed to evidence to the contrary.  In the absence of a meaningful discussion from the ALJ of whether the threshold criteria were met, the Court cannot conclude, on this record, that the ALJ's failure to consider all of the evidence concerning the claimant's oral corticosteroid usage was harmless.  *Bentley v. Commissioner of the Social Sec. Admin.*, No. 3:10-CV-0032-L, 2011 WL 903455, at *10 (N.D.Tex., Feb. 24, 2011) ("[Without the necessary detail and explanation of ALJ, the Court cannot determine whether or nor the decision that Plaintiff failed to meet a Listing is based on substantial evidence.").  Plaintiff appears to have met her burden of demonstrating that her substantial rights were affected by the ALJ's failure to fully consider Listing 103.03C2.  *Audler*, 501 F.3d at 448.  Accordingly, this matter should be remanded for further proceedings.  The Court

---

[8]*Id.* at 359-64.

expresses no opinion about the decision to be made on remand as further analysis may very well result in the same conclusion.  However, in order to facilitate meaningful judicial review, the ALJ should fully consider all of the evidence, and make express findings as to whether each listing criterion are met.

For all these reasons, the undersigned recommends that the ALJ's decision should be remanded for further proceedings consistent with this decision. Plaintiff's motion should be granted only to the extent that the case is remanded to the Commissioner; the Motion for an Order Affirming the Commissioner's Decision should be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3 ) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636.

This the 7th day of January 2017.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE